x

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ZABIAN ROWE | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| HOSPITAL HOUSEKEEPING | ) | |
| SYSTEMS, LLC; | ) | JURY DEMAND |
| | ) | COLLECTIVE ACTION |
| Defendants | ) | |

# COMPLAINT

Plaintiff Zabian Rowe, through undersigned counsel, hereby alleges as follows:

## THE PARTIES

1. Zabian Rowe is an individual of the full age of majority and a resident of St. John the Baptist Parish, Louisiana.

2. Defendant Hospital Housekeeping Systems, LLC (hereinafter "HHS"), is a Texas limited liability company based in Austin and registered to do business in Louisiana.

3. HHS provides contracted services, including cleaning, laundry, and dietary services, to medical facilities such as hospitals.

4. HHS has contracts with several hospitals and medical facilities within this State and this District, including Tulane-Lakeside Hospital.

## JURISDICTION AND VENUE

5. This Complaint is brought pursuant to the Fair Labor Standards Act ("FLSA"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. A substantial part of the events or omissions giving rise to this claim occurred within this District, and Defendant regularly engages in business within this District and is subject to personal jurisdiction here. Venue is therefore proper in this Court. 28 U.S.C. § 1391.

7. Defendant is engaged in commerce pursuant to 29 U.S.C. § 203(s).

8. Defendant's annual volume of sales made and business done has exceeded $500,000 during each year at issue in this Complaint.

## FACTUAL ALLEGATIONS

9. Plaintiff worked for HHS from September 2014 until September 2015.

10. Plaintiff was employed as a floor tech, and his primary job duties included stripping and waxing the hospital floors.

11. Plaintiff was paid as a non-exempt hourly employee.

12. Plaintiff's initial hourly pay rate was $9.50, and he later received a raise to $11.00.

13. Plaintiff's usual place of work was the Tulane-Lakeside Hospital.

14. On some occasions, Plaintiff would perform additional work at other facilities where HHS had contracts, including as the Tulane Medical Center downtown and the former Kenner Regional Hospital.

15. When Plaintiff worked at these other facilities, this time would not be paid at an overtime rate. Instead, he would be paid by separate check, at his regular hourly rate, for the time spent working at the other facilities.

16. Plaintiff was required to clock in and out using an electronic passcard.

17. Plaintiff's supervisor, Ormando Whitlock, had the ability to edit Plaintiff's time entries after they were entered.

18. Plaintiff sometimes noticed that hours were missing from his pay.

19. Plaintiff complained about the missing time to Whitlock. Whitlock explained to Plaintiff

that, as a supervisor, he was eligible for a bonus if he kept labor costs down.

20. Plaintiff also spoke with several other HHS employees who believed that their hours had been shorted.

21. In August 2015, Plaintiff noticed that an unusually large number of hours were missing from one particular paycheck.

22. Plaintiff does not have access to HHS' timekeeping computer, and thus could not independently determine whether his time punches had been amended, deleted, or otherwise changed. He therefore asked HHS to provide him with a full and complete time audit so that he could see whether hours had been deducted from his pay.

23. HHS supervisors and executives attempted to dissuade Plaintiff from requesting an audit.

24. Whitlock told Plaintiff that "you got me in trouble" for requesting the audit.

25. Tommy Gray, an HHS Vice President based in Austin, called Plaintiff several times and asked him not to go forward with the audit. He offered to pay Plaintiff for all hours he was short if Plaintiff agreed to forego the audit request.

26. Plaintiff was uncomfortable with Gray's requests and frustrated by HHS' delay in paying him. On September 15, 2015, Plaintiff contacted the Department of Labor and requested a formal audit of HHS pay practices.

27. On September 23, 2015, HHS presented Plaintiff with his time audit report and simultaneously fired him.

28. The time audit report shows that HHS supervisors had, in fact, altered Plaintiff's time records after the fact and reduced 11 hours from his August 2015 paycheck.

**COLLECTIVE ACTION CLAIMS**

29. Plaintiff brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) on

behalf of all other current and former similarly situated employees who worked for Defendants within the State of Louisiana within the three years of the date of filing this lawsuit.

30. Like Plaintiff, Defendant's other employees were subjected to unlawful deductions from their time sheets, and not paid overtime for hours worked at separate facilities.

31. The collective is hereby defined as:

> All nonexempt hourly employees of Hospital Housekeeping Systems, LLC, who worked within the State of Louisiana at any time between September 20, 2014 to the date of judgment in this action.

32. Defendants' failure to pay statutorily mandated overtime pay to the members of the collective constitutes a common practice, policy, or plan to deny overtime in violation of the FLSA.

33. Plaintiff is similarly situated to the remaining members of the collective in that they have all been denied overtime premiums despite working more than 40 hours in a week.

34. Plaintiff requests that, at the soonest practicable time, the Court order that notice be given to the remaining members of the collective so that they may exercise their right to opt in to this action.

## FIRST CAUSE OF ACTION

## FAILURE TO PAY OVERTIME (29 U.S.C. § 207)

## ON BEHALF OF PLAINTIFF AND THE MEMBERS OF THE COLLECTIVE

35. Plaintiff hereby realleges and reincorporates paragraphs 1-34.

36. The FLSA requires that employers pay nonexempt employees at a rate of at least one and one-half times their regular rate for all hours over forty in a workweek.

37. By reducing recorded hours from the electronic timesheets of Plaintiff and the other members of the collective, Defendant failed to pay all overtime premiums earned.

38. By not paying employees at a time-and-a-half rate for hours worked at other facilities, Defendant failed to pay all overtime premiums earned.

39. Defendant had actual and constructive knowledge that Plaintiff and the remaining members of the collective were regularly working more than 40 hours in a week.

40. Defendant engaged in a concerted policy of pressuring supervisors to keep labor costs low, and offered bonuses to supervisors for saving on labor costs. This created a direct incentive for supervisors to reduce hours worked from timesheets.

41. Defendant's nonpayment of overtime was willful and not based in a good faith belief that its conduct was in accordance with the law.

42. Defendant's unlawful wage payment practices have caused damage to Plaintiff and the members of the collective in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

## FLSA RETALIATION (29 U.S.C. § 215)

## ON BEHALF OF ZABIAN ROWE, INDIVIDUALLY

43. Plaintiff hereby realleges and reincorporates Paragraphs 1-42.

44. The FLSA contains an anti-retaliation provision stating that it is illegal for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3).

45. Plaintiff engaged in protected activity by complaining to HHS management about the underpayment of wages.

46. Plaintiff engaged in protected activity by contacting the Department of Labor regarding the HHS pay practices at issue here.

47. HHS fired Plaintiff in retaliation for his protected activity, and its stated reasons for termination were pretextual.

48. As a result of Defendants' retaliatory firing, Plaintiff has suffered damages and seeks

remedies including unpaid back pay and benefits, reinstatement or (in the alternative) front pay, emotional distress damages, and other damages to be proven at trial.

## JURY DEMAND

49. Plaintiff hereby requests a trial by jury on all claims so triable.

**WHEREFORE**, Plaintiff and the members of the collective respectfully pray for judgment as follows:

a. That this case be allowed to proceed as a collective action;

b. For an award of all unpaid wages and overtime according to proof;

c. For an award of liquidated damages pursuant to 29 U.S.C. § 216(b);

d. For an award of reasonable attorney's fees;

e. For costs of suit;

f. For injunctive and equitable relief as provided by law;

g. For an award of back pay and benefits;

h. For an order reinstating Plaintiff to his position or, in the alternative, for an award of front pay;

i. For an award of compensatory and other general damages to be proven at trial;

j. For pre and post-judgment interest; and

k. For such other and further relief as may be just and proper.

Respectfully Submitted,

/s/ Charles J. Stiegler
Charles J. Stiegler, #33456 (TA)
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite 104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com