UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ZABIAN ROWE | CIVIL ACTION |
| VERSUS | No. 17-9376 |
| HOSPITAL HOUSEKEEPING SYSTEMS, LLC | SECTION I |

### ORDER & REASONS

Before the Court is plaintiff Zabian Rowe's ("Rowe") motion[1] to conditionally certify a collective action under the Fair Labor Standards Act ("FLSA").[2] For the following reasons, the motion is denied.

### I.

The FLSA provides that an action to recover "unpaid overtime compensation . . . may be maintained against any employer . . . by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). But the FLSA does not define "similarly situated" or otherwise explain how the certification of such collective actions should proceed.

There are two main lines of authority that prescribe different methods of determining whether a case may proceed as a collective action pursuant to § 216(b).

---

[1] R. Doc. No. 19.
[2] In his reply, Rowe notes that the response in opposition to his motion was untimely filed and argues it should be stricken. The response was untimely. *See* Local Rule 7.5. Nevertheless, the Court refuses to strike it. Rowe was clearly not prejudiced by the delayed filing, as his counsel had sufficient time to draft a thorough reply responding to the arguments raised in the opposition. Therefore, the Court considers the opposition and Rowe's reply in disposing of the instant motion.

*See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995).  The first is known as "two-stage class certification," which was developed in a line of cases starting with *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), and the second is referred to as "spurious" class certification, as typified by *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990).  Because the two-stage class certification procedure is routinely used by all sections of this Court, the Court finds that the *Lusardi* procedure is appropriate in this case.  *See Wellman v. Grand Isle Shipyard, Inc.*, No. 14-831, 2014 WL 5810529, at *1-3 (E.D. La. 2014) (Africk, J.).

The Fifth Circuit has explained the typical *Lusardi* procedure:

> Under *Lusardi*, the trial court approaches the 'similarly situated' inquiry via a two-step analysis.  The first determination is made at the so-called 'notice stage.'  At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.  If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.'  The action proceeds as a representative action through discovery.

*Mooney*, 54 F.3d at 1213-14 (footnote omitted); *see also Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 518-19 (5th Cir. 2010).

The second stage of the *Lusardi* procedure "is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely

complete and the matter is ready for trial." *Mooney*, 54 F.3d at 1214. Only the threshold "notice stage" is implicated by the instant motion.

The notice stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1214 n.8 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). However, "[w]hile the standard at this stage is not particularly stringent, it is by no means automatic." *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (internal quotation marks omitted).

"At the notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist." *Id.* In doing so, "[a] plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist." *Id.* "However, at least some evidence beyond unsupported factual assertions of a single decision, policy, or plan should be presented." *Id.*

"[A]n FLSA class determination is appropriate when there is a demonstrated similarity among the individual situations . . . [and] some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877-78 (E.D. La. 2008). That determination is usually made based on "the pleadings and any affidavits which have been submitted." *Mooney*, 54 F.3d at 1214.

In making its determination, the Court must remain "mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted

litigation." *Lima*, 493 F. Supp. 2d at 799 (quoting *Lentz v. Spanky's Restaurant II, Inc.*, 491 F. Supp. 2d 663 (N.D. Tex. 2007)). "Further, employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses." *Id.*

## II.

### A.

Rowe asserts that defendant Hospital Housekeeping Systems, LLC ("HHS") "underpays wages and overtime by reducing hours from employee time records, and encourages and pressures individual supervisors to do the same."[3] He further contends that "HHS also applies a half-hour automatic lunch deduction from its employee's time records, even though [p]laintiff often worked through his meal break."[4]

Specifically, Rowe alleges that, upon noticing hours missing from his paycheck in November 2014, he confronted a supervisor, and the hours were added back.[5] A similar scenario unfolded in February 2015, and Rowe was again "paid belatedly" for the unpaid hours.[6] At that time, Rowe purportedly inquired as to why his hours were being reduced, and he was told that HHS "places it supervisors on strict labor budgets and that he would be eligible for a bonus if he kept labor costs down."[7] Finally, in August 2015, Rowe claims he noticed more hours missing from his paycheck, so he

---

[3] R. Doc. No. 19-2, at 2.
[4] *Id.*
[5] *Id.* at 3.
[6] *Id.*
[7] *Id.*

4

requested an audit report from HHS.[8] An HHS vice president allegedly attempted to dissuade Rowe from moving forward with the audit, but Rowe insisted.[9] The audit was provided to Rowe, and he was fired the same day.[10] Rowe has attached the audit report to his affidavit.

Rowe further claims "[o]ther HHS employees or former employees have also told [him] that they were not paid for all hours worked."[11] Though, "unlike [him], they did not complain because they were afraid that HHS would punish them."[12] Additionally, Rowe states his belief that "there was a common policy and practice at HHS of reducing hours from employee timesheets to make labor budgets."[13]

Rowe has also provided an affidavit from another HHS employee that has joined in this suit.[14] St. Raymond Cooper alleges that he believes he was not paid for all hours worked at HHS; that he complained to his supervisor about "being shorted" on his wages and was transferred to a different hospital; and that he has requested a time audit report from HHS, but they have refused to provide it.[15] Like Rowe, Cooper also states that he "believe[s] there was a common policy and practice at HHS of reducing hours from employee timesheets to make labor budgets."[16]

---

[8] *Id.*
[9] *Id.*
[10] *Id.* HHS maintains that Rowe's firing had nothing to do with Rowe's request for a time audit, but was rather due to the fact that Rowe violated HHS and hospital policy by filming an incident with a security officer. R. Doc. No. 20, at 2.
[11] R. Doc. 19-3, at 2.
[12] *Id.*
[13] *Id.*
[14] R. Doc. No. 19-4.
[15] *Id.*
[16] *Id.*

**B.**

Although the standard for conditional certification is lenient, it is not automatic, and it is not toothless. To meet his burden at the notice stage, Rowe must offer *substantial* allegations of an unlawful decision, policy, or plan by HHS. "Unsupported assertions of widespread violations are not sufficient to meet [his] burden." *Xavier*, 585 F. Supp. 2d at 877. Yet Rowe has offered little more than "conclusory assertions that other employees were subject to unlawful overtime policies and would desire to opt-in to this action." *Crowley v. Paint & Body Experts of Slidell, Inc.*, No. 14-172, 2014 WL 2506519, at *8 (E.D. La. June 3, 2014) (Brown, J.).

To be sure, Rowe's complaint and his subsequent affidavit provide facts that, if taken as true, may be suggestive of an FLSA violation with respect to Rowe. Specifically, Rowe contends that, by reducing recorded hours from his timesheets, HHS failed to pay him earned overtime. Moreover, Rowe has bolstered his claim by providing an audit report of his timesheets which, according to him, shows that eleven hours were deducted from one of his paychecks.

Beyond that, however, Rowe offers little from which the Court can infer "some factual nexus which binds [him] and the potential class members together as victims of a particular alleged [policy or practice]." *Xavier*, 585 F. Supp. 2d at 877–78. For example, Rowe's affidavit, void of detail, states that other HHS employees told him that they were not paid for all hours worked. Yet, Rowe has not furnished the names of any such individuals, much less affidavits from them. Indeed, Rowe even failed to

provide an affidavit from Gwendolyn Morris, who has joined this very case as a plaintiff.  Moreover, Rowe offers no details as to why these other employees determined that they had not been paid for all hours worked or how they were harmed by the same decision, policy, or plan of which Rowe claims to be a victim.

The one relevant affidavit[17] that Rowe has provided—other than this own—is Cooper's.  All Cooper's affidavit states is that he worked for HHS, that he inquired as to why his wages were being "shorted," that he was transferred, that he believes he was not paid for all of the hours he worked, that he requested a time report audit that HHS has refused to give him, and that he believes there was a common policy and practice at HHS of reducing hours from employee timesheets to make labor budgets.  Cooper offers no facts that explain how his wages were shorted, why he believes he was not paid for the full amount of time he worked, or how he came to the conclusion that HHS reduced the hours of its employees to lower costs.  Ultimately, Cooper's affidavit may suggest the presence of an employer-employee dispute as to hours worked.  However, it offers no facts or evidence to support the allegation that HHS

---

[17] By way of an affidavit from his counsel, Rowe offers a memorandum sent to HHS employees reminding them to work their assigned shifts and to respect the time limits of said shifts.  According to the memorandum, "[t]his means clocking in at the designated time and clocking out at the designated time, unless specified by a manager."  The memorandum also states that if an employee "cannot complete [his or her] task in time and have all equipment cleaned and put away this will result in disciplinary action and if not corrected may result in termination."  The memorandum concludes by noting: "We appreciate each of you, however we must be mindful of company time and money."  The Court does not see how this is relevant to defining a potential class that would warrant conditional certification.  As HHS points out, "there is nothing wrongful about a company being mindful of budgets and resources."

supervisors retroactively modified employee timesheets to reduce employees' hours in an effort to keep costs under control.

Consequently, Rowe's current showing fails to establish a "reasonable basis for the allegation that a class of similarly situated persons may exist." *Lima*, 493 F. Supp. 2d at 798. On this record, the Court cannot conclude that this case should proceed as a collective action.

Accordingly,

**IT IS ORDERED** that the motion for conditional certification is **DENIED WITHOUT PREJUDICE**.

New Orleans, Louisiana, February 6, 2018.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**